**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| CINDY L. ADMIRE, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>WAL-MART SUPERCENTER #1621 (a/k/a Centerville Walmart Supercenter), a corporation; WAL-MART STORES, INC., a corporation; and WALMART, INC. (a/k/a WAL-MART, INC.), a corporation,<br><br>   Defendants. | Case No. 4:19-cv-218<br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Cindy L. Admire, an individual, by and through her attorneys, Justin K. Swaim of Swaim Law Firm, P.L.L.C. and Stuart L. Higgins of Higgins Law Firm, P.L.L.C., and in support of her causes of action against the above-named Defendants, Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), Wal-Mart Stores, Inc., and Walmart, Inc. (a/k/a Wal-Mart, Inc.), states as follows:

**NATURE OF ACTION**

1. This is a civil action for damages and injunctive relief caused by Defendants' violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, and its implementing regulations, as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, and its implementing regulations, 28 C.F.R. Part 35 (the "ADA") and the Iowa Civil Rights Act, Iowa Code Chapter 216, when Defendants discriminated against Plaintiff because of her disabilities and/or perceived disabilities and failed to accommodate Plaintiff's disabilities.

**PARTIES**

2. Plaintiff Cindy L. Admire ("Plaintiff" or "Cindy Admire" or "Admire") is a citizen of the United States of America and of the State of Iowa, who, at all material times hereto, resided and continues to reside in Centerville, Appanoose County, Iowa. Plaintiff was an "employee" of the Defendants, or one or more of them, within the meaning of 42 U.S.C. §12111(4) and 42 U.S.C. §2000e(f) at the time she was discriminated against because of her disability and at the time she requested accommodations due to her disability. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. §12102.

3. Defendant Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter) was, at all material times hereto, and is a corporation located and doing business at 23148 Highway IA-5 in Centerville, Appanoose County, Iowa. Defendant Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter) is an "employer" within the meaning of 42 U.S.C. §12111(5) and 2000e(b) and Iowa Code 216, and a covered entity within the meaning of 42 U.S.C. §12111(2).

4. Upon information and belief, Defendant Wal-Mart Stores, Inc. was, at all material times hereto, and is a corporation with its headquarters and home office located at 702 SW 8th Street in Bentonville, Benton County, Arkansas, which conducts business in and throughout the State of Iowa, including operations at 23148 Highway IA-5 in Centerville, Appanoose County, Iowa. Defendant Wal-Mart Stores, Inc. is an "employer" within the meaning of 42 U.S.C. §12111(5) and 2000e(b) and Iowa Code 216, and a covered entity within the meaning of 42 U.S.C. §12111(2).

5. Upon information and belief, Defendant Walmart, Inc. (a/k/a Wal-Mart, Inc.) was, at all material times hereto, and is a Delaware corporation with its headquarters and home office

located at 702 SW 8th Street in Bentonville, Benton County, Arkansas, which conducts business in and throughout the State of Iowa, including operations at 23148 Highway IA-5 in Centerville, Appanoose County, Iowa.  Defendant Walmart, Inc. (a/k/a Wal-Mart, Inc.) is an "employer" within the meaning of 42 U.S.C. §12111(5) and 2000e(b) and Iowa Code 216, and a covered entity within the meaning of 42 U.S.C. §12111(2).

6. Plaintiff was an employee of Defendants, or one or more of them, at the Walmart store located at 23148 Highway IA-5 in Centerville, Appanoose County, Iowa, at the time she was discriminated against because of her disability and at the time she requested accommodations due to her disability.

7. This suit arises out of the Defendants' discrimination against Plaintiff while Plaintiff was employed with Defendants, or one or more of them, at the Walmart store located at 23148 Highway IA-5 in Centerville, Appanoose County, Iowa, and the Defendants' failure to accommodate Plaintiff's disabilities.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(a)(4).  This Court has authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. §12117.

9. Venue is proper and appropriate in this Court pursuant to 28 U.S.C. §1391(b)(1)-(2), since Defendants conduct business, and all or a substantial part of the events and omissions giving rise to this claim occurred, in this judicial district, the Southern District of Iowa.

10. Plaintiff invokes supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## PROCEDURAL REQUIREMENTS

11. Within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission. The charge was cross-filed with the Equal Employment Opportunity Commission.

12. On April 23, 2019, the Equal Employment Opportunity Commission mailed its Notice of Suit Rights with respect to Plaintiff's charges of discrimination, and Plaintiff is filing this Complaint and Jury Demand within 90 days of receipt of the Notice of Suit Rights.

13. On June 21, 2019, and within 90 days prior to the filing of this Complaint and Jury Demand, the Iowa Civil Rights Commission issued an Administrative Release (Letter of Right-To-Sue) with respect to Plaintiff's charges of discrimination.

## FACTUAL ALLEGATIONS

14. Plaintiff began working for Defendants Walmart, Inc. (a/k/a Wal-Mart, Inc.), Wal-Mart Stores, Inc., and/or Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), or one or more of them (collectively "Walmart" or "Defendants"), as a part-time cashier on February 20, 2013.

15. Plaintiff worked her way up through the ranks at Walmart in Centerville, Iowa, moving from part-time cashier to full-time cashier, and then to a full-time position as a pharmacy support associate.

16. Then, a full-time position as a department manager of softlines (clothing) opened at the Walmart in Centerville, Iowa, and Plaintiff applied for that position.

17. Plaintiff was qualified for this position (department manager of softlines (clothing)), and, on or about February 8, 2017, Plaintiff was offered and accepted this position.

18. In her new position as department manager of softlines (clothing), Plaintiff's job duties included: taking clothes out to the racks, hanging clothes on the racks and putting them on the floor, performing count availability, and doing mark downs, returns, price changes, mark-offs, and handling clearance items.

19. Plaintiff was able to and did perform these job duties.

20. However, after starting her new position, Plaintiff began hearing from other employees at Walmart about a required out-of-town training/classes for managers.

21. There was no mention of any required traveling for this new position or for training/classes for this position when Plaintiff interviewed for the softlines department manager position at Walmart in Centerville, Iowa.

22. Pursuant to the Americans with Disabilities Act ("ADA") and the Iowa Civil Rights Act ("ICRA"), Plaintiff suffers from a disability.

23. More specifically, Plaintiff suffers from severe anxiety, a severe anxiety/panic condition/disorder, with respect to traveling and new/unfamiliar environments. Plaintiff has had severe anxiety with respect to traveling most of her life. These conditions constitute disabilities pursuant to the ADA and the ICRA.

24. When Plaintiff learned, after starting her new position as the softlines department manager, that she was going to be required to travel to attend an out-of-town training for 3 to 5 days, her severe anxiety kicked in causing her great angst, nervousness, and distress. Plaintiff's anxiety was made even worse when she learned that the out-of-town training would require her to stay overnight in a motel/hotel room with someone she did not know and had never even met.

25.     Plaintiff has never stayed in a motel/hotel room in her entire life.  The thought of having to travel out of town for training in an unfamiliar environment, and then stay in a motel/hotel room with a complete stranger, caused Plaintiff to start to panic.

26.     After learning of this required out-of-town training for managers from other employees at Walmart, Plaintiff began speaking with the Human Resources ("HR") Manager at the Walmart in Centerville, Iowa, Cheryl Kirkland, about the training and told Ms. Kirkland of Plaintiff's medical condition, i.e., her severe anxiety/panic disorder.  Plaintiff notified Ms. Kirkland that she would be unable to attend the out-of-town training.

27.     Plaintiff's primary health provider, Patricia Blackledge, ARNP, with whom Plaintiff had previously treated for her severe anxiety/panic disorder, provided a letter dated March 8, 2017, to Walmart relaying the fact that Plaintiff had been struggling with chronic anxiety that is flared by travel and new environments; and, that Plaintiff suffers symptoms that would interfere with her ability to participate effectively in training or education.  Ms. Blackledge recommended, in that letter, that Plaintiff avoid overnight travel or training.

28.     Still, after these discussions with Ms. Kirkland (in HR) and the letter from Plaintiff's treating health care provider, Ms. Blackledge, Plaintiff was called into the office at the Walmart in Centerville, Iowa, in March 2017, and told that she was scheduled to go for her required out-of-town training on April 16th through April 21st.

29.     At some point in early April 2017, Plaintiff was called into Cheryl Kirkland's (HR Manager for Centerville Walmart's) office and was told that a person from Sedgwick (Walmart's insurance company) wanted to talk with her about "accommodations" with respect to the required out-of-town training.

30. While the purported purpose of this call was to discuss "accommodations" with respect to the required out-of-town training, none of the proposed "accommodations" offered by Walmart (through Sedgwick) addressed Plaintiff's condition, i.e., her severe anxiety of traveling out of town.

31. After Plaintiff told Ms. Kirkland and the person on the phone from Sedgwick that the proposed "accommodations" did not address her condition, i.e., her severe anxiety of traveling out of town, as all of the proposed "accommodations" still required Plaintiff to travel out of town to some location hours away for the training, the lady on the phone from Sedgwick said that Cheryl Kirkland (HR Manager for the Centerville Walmart store) would look into other options for the training and Ms. Kirkland agreed to do so.

32. However, despite their representations, assurances, and promises that they would look into other options for the required training, Walmart did not provide Plaintiff with any other options for the training.

33. Walmart still had Plaintiff scheduled to go for her out-of-town training from April 16th through April 21st.

34. Because of this, Plaintiff was in a constant and continual state of anxiousness and distress.

35. On April 14, 2017, Plaintiff's husband, who is disabled, became extremely ill and had to be taken to the emergency room and kept in the hospital. Once her husband was released from the hospital, Plaintiff took a leave of absence from work at Walmart to take care of him.

36. Knowing that upon her return to Walmart, after getting her husband home from the hospital and taking care of him, she would again be facing the issue of the required out-of-town training, Plaintiff again went and spoke with her primary health care provider, Patricia

Blackledge, ARNP, about her anxiety and Walmart's continuing demand that she travel out of town for training.

37. At this point, Ms. Blackledge, completed a Certification of healthcare provider for associate's serious health condition ("Certification").

38. Plaintiff provided this Certification from her primary health care provider, Ms. Blackledge, to Cheryl Kirkland (HR Manager for the Centerville Walmart store). Ms. Kirkland signed the Certification on April 24, 2017, acknowledging receipt and notice.

39. With that Certification, Ms. Blackledge, Plaintiff's primary health care provider, notified Walmart, again, of Plaintiff's chronic anxiety. And, Ms. Blackledge notified Walmart, with that Certification, that Plaintiff had severe anxiety or panic disorder and that Plaintiff was unable to travel out of town for training due to her anxiety and panic. Further, with that Certification, Ms. Blackledge notified Walmart that Plaintiff would be unable to learn and process information at an out-of-town training due to increased anxiety.

40. With that same Certification, Ms. Blackledge even suggested that Plaintiff would be able to attend/do the training through virtual or online instructions.

41. This was a reasonable accommodation suggested by Plaintiff's health care provider to Walmart, and a reasonable alternative to the out-of-town training that would address and/or accommodate Plaintiff's disability.

42. Walmart refused, rejected, and never provided Plaintiff with this reasonable accommodation of her disability that was suggested by Plaintiff's health care provider.

43. Upon returning to work at Walmart in Centerville, Iowa, after taking leave to care for her husband after his emergency hospitalization, Plaintiff was called into a meeting in the Centerville Walmart's HR office on or around May 8, 2017.

44. In this meeting, Hillary Elko (Store Manager for Centerville Walmart) and Cheryl Kirkland (HR Manager for Centerville Walmart) told Plaintiff there was no way around the mandatory out-of-town training.

45. Plaintiff told Ms. Elko and Ms. Kirkland that she had no problem taking the classes, studying, and taking the tests that made up the training, but that she could not travel out of town for the training due to her disability, i.e. severe anxiety.

46. Plaintiff asked Ms. Elko and Ms. Kirkland, during this meeting, if she could do the training via Skype. But, Ms. Elko told Plaintiff no because she said Walmart did not have Skype there (at the Centerville Walmart store).

47. Plaintiff next asked Ms. Elko and Ms. Kirkland, during this meeting, if she could go to Indian Hills Community College, the local community college in Centerville, Iowa, and take the training classes over the computer there, as Indian Hills would have Skype capability. Again, Ms. Elko told Plaintiff no.

48. Ms. Elko told Plaintiff, during this meeting, that there was no way she could avoid going to the out-of-town training, and that it was mandatory.

49. Plaintiff again told Ms. Elko and Ms. Kirkland that she did not have a problem with taking the classes, but rather it was the traveling out of town for several days that she could not do given her severe anxiety condition/panic disorder.

50. In response, Ms. Elko only said that they hated to lose Plaintiff, as she was a good worker. But, Ms. Elko said there is no way around this out-of-town training.

51. From Ms. Elko's comments, it was clear to Plaintiff that Ms. Elko was telling Plaintiff that Plaintiff was or would be terminated from her employment if she did not go to the out-of-town training.

52. Desperate to not completely lose a job with the Centerville Walmart store, Plaintiff then asked Ms. Elko if she could step back down to a cashier position and take a pay cut. That way, Plaintiff would not have to travel to the out-of-town training (which was only for managers/management), and Plaintiff would, at least, have some job with the Walmart store in Centerville, Iowa.

53. In response to this request, Ms. Elko told Plaintiff no; that Plaintiff would only be able to do that if she changed her hours of availability.

54. Plaintiff told Ms. Elko she is and would be available to work from 6:00 A.M. to 7:00 P.M. everyday, seven days a week, Sunday through Saturday.

55. Plaintiff told Ms. Elko she had no problem working weekends. However, Plaintiff told Ms. Elko that her husband is disabled and that Plaintiff could only be available until 7:00 P.M. every night, as she has to be home at night to take care of him.

56. In response, Ms. Elko again said they hated to lose Plaintiff, but that they (Centerville Walmart store) needed a cashier for nights and weekends.

57. Again, it was clear to Plaintiff, from Ms. Elko's comments, that she was being told she was or would be terminated from her employment if she did not go to the out-of-town training.

58. Walmart had already rescheduled Plaintiff's out-of-town training for the end of May 2017.

59. Plaintiff knew from her May 8, 2017 meeting with Ms. Elko and Ms. Kirkland that she was or would be terminated if she did not travel to the out-of-town training that was scheduled for later that month.

60. Plaintiff knew that, because of her severe anxiety condition/panic disorder, she could not and would not be able to travel to the out-of-town training.

61. The stress, anxiety, and pressure from all of this finally drove Plaintiff to the breaking point.

62. On or about May 11 or 12, 2017, Plaintiff left work at the Centerville Walmart store early. Plaintiff reported to Walmart that she was leaving early for health issues due to the stress.

63. Then, on May 15, 2017, Plaintiff called into the Centerville Walmart store and had to take the day off due to her anxiety flaring up. Plaintiff knew that the required out-of-town training was quickly approaching, that she could not travel out of town for this training, and that she was or would be terminated by Walmart if she did not go.

64. Then, on May 16, 2017, Plaintiff again called into the Centerville Walmart store for health reasons due to her anxiety over this situation. Either that day or the following day, May 17, 2017, Plaintiff told Walmart she was leaving for good for health reasons due to her anxiety over the situation, i.e., the out-of-town training and Walmart's refusal to provide reasonable accommodations of her disability.

65. Plaintiff had no choice. She knew, from her meeting with Hillary Elko (Store Manager for Centerville Walmart) and Cheryl Kirkland (HR Manager for Centerville Walmart) she was being terminated or about to be terminated when she did not go to the out-of-town training scheduled the end of May 2017. The anxiety and stress from knowing this put Plaintiff over the edge. She could not go on like that anymore.

66. Plaintiff was being terminated, forced to quit, and/or constructively discharged for her disability in violation of the ADA and the ICRA.

## COUNT 1:  VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## (42 U.S.C. §12101, *et seq.*)
##  (DISABILITY DISCRIMINATION)

COMES NOW Plaintiff, Cindy L. Admire, and for Count 1 of her cause of action against Defendants Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), Wal-Mart Stores, Inc., and Walmart, Inc. (a/k/a Wal-Mart, Inc.), states:

67. Plaintiff repleads, repeats, and realleges, as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 66, and incorporates the same by this reference.

68. Plaintiff is an individual with a disability within the meaning of the ADA.

69. Walmart discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her disability, in violation of the Americans With Disabilities Act.

70. Walmart refused to provide Plaintiff with a reasonable accommodation, in violation of the Americans With Disabilities Act.

71. Walmart terminated, forced to quit, and/or constructively discharged Plaintiff in violation of the Americans With Disabilities Act.

72. As a result of Walmart's acts and omissions, Plaintiff has in the past and will in the future suffer injuries.

73. Walmart acted with malice and reckless disregard for Plaintiff's federally protected rights.

WHEREFORE the Plaintiff, Cindy L. Admire, does hereby make claim and seek judgment against the Defendants, Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), Wal-Mart Stores, Inc., and Walmart, Inc. (a/k/a Wal-Mart, Inc.), jointly and

severally, in an amount that will fully and fairly compensate Plaintiff for all of the injuries and damages sustained by her, for appropriate equitable and injunctive relief, for punitive damages against Defendants in an amount sufficient to punish them and deter them and others, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purposes of the Americans With Disabilities Act.

### COUNT 2:  VIOLATION OF THE IOWA CIVIL RIGHTS ACT (IOWA CODE CHAPTER 216) (DISABILITY DISCRIMINATION)

COMES NOW Plaintiff, Cindy L. Admire, and for Count 2 of her cause of action against Defendants Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), Wal-Mart Stores, Inc., and Walmart, Inc. (a/k/a Wal-Mart, Inc.), states:

74. Plaintiff repleads, repeats, and realleges, as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 73, and incorporates the same by this reference.

75. Walmart discriminated against Plaintiff with respect to the terms and conditions of her employment on the basis of her disabilities, failed to accommodate her, and terminated, forced to quit, and/or constructively discharged Plaintiff's employment in violation of Iowa Code Chapter 216.

76. As a direct and proximate result of Walmart's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; medical, therapeutic and other expenses; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE the Plaintiff, Cindy L. Admire, does hereby make claim and seek judgment against the Defendants, Wal-Mart Supercenter #1621 (a/k/a Centerville Walmart Supercenter), Wal-Mart Stores, Inc., and Walmart, Inc. (a/k/a Wal-Mart, Inc.), jointly and severally, in an amount that will fully and fairly compensate Plaintiff for all of the injuries and damages sustained by her, together with interest thereon at the maximum legal rate, for attorney's fees, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

**JURY DEMAND**

The above-named Defendants, and each of them, are hereby notified that the Plaintiff herein does hereby demand trial by jury on all issues presented in this Complaint triable to a jury.

*/s/ Justin K. Swaim*
Justin K. Swaim     AT0007788
SWAIM LAW FIRM, P.L.L.C.
701 13th Street, Suite 2
West Des Moines, Iowa  50265
Telephone:  (515) 305-1412
Facsimile:  (515) 777-1127
E-mail:  justin@swaimlawfirm.com


*/s/ Stuart L. Higgins*
Stuart L. Higgins     AT0010945
HIGGINS LAW FIRM, P.L.L.C.
701 13th Street, Suite 1
West Des Moines, Iowa  50265
Telephone:  (515) 619-9148
Facsimile:  (515) 777-1127
E-mail:  stuart@higginslawiowa.com

**ATTORNEYS FOR PLAINTIFFS**

Original Filed.